(42 Misc. Rep. 270.)

### GEORGE v. CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County. December, 1903.)

1. SUBTERRANEAN WATERS—DIVERSION—PRESCRIPTIVE RIGHTS.

Plaintiff sued the city of New York to recover for injury to his land by driven wells and pumps situated on land adjacent to his premises. The city pleaded that for more than 20 years it had pumped millions of gallons daily from such land. *Held* not to set up a prescriptive right to pump the land dry as a defense based on adverse user.

2. SAME—ACTION AGAINST CITY—DECLARATION—DEFENSES.

In an action to recover against a city for damages to plaintiff's land by pumping water from adjacent premises, plaintiff failed to allege, as required by Laws 1901, pp. 50, 114, c. 466, §§ 149, 261, that he filed his claim with the comptroller, and that the latter had neglected or refused to make an adjustment or payment thereof for 30 days after presentation. Defendant pleaded that, before suit brought, a claim was presented to the comptroller, and that he required the plaintiff to be examined as to the justice of the claim, but that he refused to be examined. *Held,* that the way to take issue was by a denial, and that, therefore, a demurrer to such pleaded defense was good; but, as the complaint failed to state a cause of action, the demurrer must be overruled, as the answer was good enough for a bad complaint.

**3. SAME—NEW MATTER.**
   Where a defense does not contain new matter, it is "insufficient in law on the face thereof," under Code Civ. Proc. §§ 494, 500.

Action by Diedrich G. George against the city of New York. Demurrer to defenses overruled.

Charles Coleman Miller, for plaintiff.
George E. Blackwell, for defendant.

GAYNOR, J. This is an action for damages alleged to be done to the plaintiff's land by the pumping of it dry by the defendant by means of driven wells and pumps on its land near by.

The answer pleads the following as a first defense:

"That for more than twenty years prior to the commencement of this action defendant and its predecessor, the city of Brooklyn, has maintained, operated and used the pumping station described in the paragraph of the complaint marked 5, in the manner described in the paragraphs of the complaint marked 5, 6 and 7, to-wit: In supplying water to the extent of several millions of gallons daily to the city of Brooklyn and the city of New York and its inhabitants for household, business, manufacturing and other purposes, and that such maintenance, use and operation of said wells and pumping station for the period aforesaid has been without the consent of the plaintiff or his predecessor in title, and that the maintenance, use and operation of said pumping station and wells promoted the public interest, and has been open and notorious."

It is claimed that this is a plea of a right by prescription, based on an adverse user of more than 20 years, to absorb the water from the plaintiff's land by means of the wells and pumps alleged in the complaint, to an extent that dries up the plaintiff's land and injures it. But with all our looseness of pleading I do not see how it can be allowed to pass as such a plea. On its face it is only a plea that the defendant has for more than 20 years maintained and operated the said pumps and wells in supplying several millions of gallons of water daily to its inhabitants for household, business and manufacturing purposes, without the plaintiff's consent. The defendant had the right from the beginning to maintain and use the wells and pumps for that purpose; it does not need to establish a right by prescription thereto. There is no allegation of the taking of the plaintiff's water, or any plea of a prescriptive right to do so. Proof on the trial by the defendant that it had used its pumps for more than 20 years, and pumped several millions of gallons daily, under a claim of right, would not cast the burden on the plaintiff of showing that it was done in subordination to his title, as the rule is in such cases; on the contrary, such proof would only show that the defendant had done what it had the right to do on its own land, viz., sunk wells and pumped therefrom; it would not show that the plaintiff's water was being taken.

The plea, to be good, must allege the fact of the taking of the water from plaintiff's land, and whether all of it, or a less quantity, which must be stated; and then allege the facts of adverse user on which title by prescription is based. An adverse user of 2,000,000 of gallons a day could not make a prescriptive title to any more than that. The plea must fit the user.

I do not see, however, that the allegation in the plea that the user was without the plaintiff's consent would destroy the plea if it were a good one.   If it were by the plaintiff's consent, it would be by his license, and a prescriptive right could not arise thereunder; and the allegation is to negative the possibility of a license.   It is an unnecessary allegation, however, and unscientific, for when the facts of an adverse user are shown, it is always for the plaintiff to show by proof of a license or otherwise that the user was subordinate to his title, instead of adverse.   Hammond v. Zehner, 21 N. Y. 118.

The phraseology of a number of judicial opinions is that the user, in order to make out a prescriptive right, has to be acquiesced in by the servient owner during the prescribed period.   Flora v. Carbean, 38 N. Y. 111; Woodruff v. Paddock, 130 N. Y. 618, 29 N. E. 1021; Eckerson v. Crippen, 110 N. Y. 585, 18 N. E. 443, 1 L. R. A. 487. This does not mean consented to, or assented to, or suffered without objection.   On the contrary, objection and protest, instead of defeating the adverse claimant, would go to show that his user was hostile or adverse, which it has to be in order to be effectual.   The phraseology is misleading; but all that can be meant by it is that the servient owner acquiesced to the extent of not bringing an action within the limited period.   He may have protested constantly against the user, and never acquiesced in it, but if he let the period of 20 years go by without bringing his action, that is the fatal acquiescence which is meant.

The answer pleads the following as a fourth defense:

"That heretofore and prior to the commencement of this action the plaintiff caused to be presented to the comptroller of the defendant, the city of New York, the claim upon which this action is founded; that thereafter and prior to the commencement of this action, the said comptroller duly required the plaintiff presenting such claim, to be sworn before him touching the same, and to answer orally as to any facts relative to the justness thereof, but that the plaintiff wholly refused to be sworn or to answer orally any facts relative to the justness of such claim."

Section 261 of the City Charter (Laws 1901, p. 114, c. 466) provides that no action shall be commenced against the city unless it shall appear by an allegation in the complaint that 30 days have elapsed since the claim upon which it is founded was presented to the comptroller of the city for adjustment, "and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment."

The complaint only alleges that more than 30 days before the commencement of the action the claim was presented to the comptroller, "but no adjustment or payment of the same has been made."   This is no allegation that the comptroller "neglected or refused."   He may have been prevented by the plaintiff refusing to appear before him and be examined on oath concerning the claim, which he has to do if the comptroller requires it (page 50, § 149) in order to enable the comptroller to make the adjustment; in which case there would be no neglect or refusal by the comptroller.   The complaint being bad on this head, it does not matter if the answer thereto be bad, for it is an old and familiar rule in considering the sufficiency of an answer on demurrer, and needing no citation of authority unless as a concession to that useless drudgery which seems in these times to be

passing for erudition, that a bad answer is good enough for a bad complaint.

That the comptroller neglected or refused to adjust is an issue to be tendered by the complaint. If it contained that allegation, a denial would be the only way by which it could be put in issue, and I should sustain the demurrer to this fourth defense, for the matter it pleads is not matter for a defense, i. e., "new matter," i. e., matter which cannot be proved under a denial.

The "defense" is "insufficient in law on the face thereof" (Code Civ. Proc. § 494) because it sets up no "new matter," and a "defense" can consist of nothing else (Code Civ. Proc. § 500). A defense can never be a plea of matter which can be proved under a denial. On the contrary, it can only consist of matter which cannot be proved under a denial, i. e., "new matter," and matter embraced in the issue raised by a denial is not new. The burden of proof is on the defendant in respect of an issue tendered by a "defense," but on the plaintiff in respect of all issues raised on the complaint, and they can be raised only by a denial or denials. If a pleaded "defense" does not create an issue which puts the burden of proof on the defendant, then it is not a "defense" at all, and should be eliminated. But in view of some late judicial utterances, however inadvertent, the subject, however plain and logical, seems to be a hopeless one. Things are now being called "defenses" which tender no new issue at all, but only embrace matter put in issue by the denial or denials of the answer.

The demurrer is overruled as to each of said defenses, as the complaint does not state a cause of action.